UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

NOV - 2002

Judge James B. Moran
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | 00 CR 737 - 2 |
| vs. ) | |
| ) | Judge James Moran |
| JAMES R. TURCOTTE, ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**
NOV 12 2002

## NOTICE OF FILING

TO: Lawrence Oliver, AUSA
Rick Meza, AUSA
U.S. Attorney's Office
219 South Dearborn Street, Room 500
Chicago, Illinois 60604

PLEASE TAKE NOTICE that on November 8, 2002, I caused to be filed DEFENDANT'S MOTION TO DISMISS COUNTS TWO AND FIVE OF THE INDICTMENT ON GROUNDS THAT THE ANALOGUE STATUTE, 21 U.S.C. §802(32)(A), AS APPLIED TO 1,4-BUTANEDIOL (BD), AND GAMMA-BUTYROLACTONE (GBL) IS UNCONSTITUTIONALLY VAGUE, a copy of which is attached herewith and served upon you.

_____
Stanley L. Hill

## CERTIFICATE OF SERVICE

Stanley L. Hill certifies that a copy of the foregoing Notice of Filing and DEFENDANT'S MOTION TO DISMISS COUNTS TWO AND FIVE OF THE INDICTMENT, were served on the above listed individuals on November 8, 2002.

_____
Stanley L. Hill

STANLEY L. HILL & ASSOCIATES, P.C.
10 South LaSalle Street Suite 1301
Chicago, Illinois 60603
312.917.8888

94

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

NOV - 8 2002

Judge James B. Moran
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | 00 CR 737 |
| vs. ) | |
| ) | Judge James Moran |
| JAMES R. TURCOTTE, ) | |
| ) | |
| Defendant. ) | |



**DEFENDANT'S MOTION TO DISMISS COUNTS TWO AND FIVE OF THE INDICTMENT ON GROUNDS THAT THE ANALOGUE STATUTE, 21 U.S.C. §802(32)(A), AS APPLIED TO 1,4-BUTANEDIOL (BD), AND GAMMA-BUTYROLACTONE (GBL) IS UNCONSTITUTIONALLY VAGUE.**

NOW COMES the defendant, JAMES R. TURCOTTE, by and through his attorney, STANLEY L. HILL, and moves this Court to dismiss Counts Two and Five of the Indictment on the grounds that the Analogue Statute, 21 U.S.C. §802(32)(A) as applied to 1,4 Butanediol (BD), and Gamma-Butyrolactone (GBL) is unconstitutionally vague.

In support of this motion defendant states as follows:

1.  Defendant is charged in Count Two of the Indictment with conspiracy to possess with intent to distribute GBL and BD, which are alleged to be Schedule I controlled substance analogues as defined by 21 U.S.C. §802(32).

2.  Defendant is charged in Count Five of the indictment with possession with intent to distribute GBL, which is alleged to be a Schedule I controlled substance analogue as defined by 21 U.S.C. §802(32).

3. The Analogue Statute defines a "controlled substance analogue as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. §802(32)(A).

4. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A statute is not void for vagueness if it "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," United States v. Petrillo, 332 U.S. 1, 9, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).,

5. In the instant case, the language requiring the "chemical structure" of the substance BD and GBL to be substantially similar to the chemical structure of GHB does not convey sufficiently definite warning as to the proscribed conduct when measured by common understandings and practices.

2

6. The phrase "substantially similar to the chemical structure of a controlled substance" is not so familiar that a reasonable layperson could determine what it means as applied to BD and GBL. See: United States v. Roberts, 2002 WL 31014834 (S.D.N.Y.), attached herewith.

7. In Roberts, Judge Sweet of the United States District Court for the Southern District of New York, when considering the constitutionality of the Analogue Statute as applied to BD, opined that if the scientific community cannot agree on the proper methodology to be used to determine structural similarity to Gamma Hydroxybutyric Acid (GHB), how can a layperson make the determination.

8. Even if the chemical structural diagrams of BD, GBL and GHB are made available to a layperson, the lack of consensus by the experts in the field as to the import of those diagrams, demonstrates that they could not provide a person with the degree of notice sufficient to know whether their conduct would be prohibited by the Analogue Statutes. See: United States v. Forbes, 806 F. Supp. 232, 237-38 (D.Colo. 1992) (holding Analogue Statute vague as applied to AET where the "scientific community cannot even agree on a methodology to use to determine structural similarity" and "criminal culpability will turn solely on a 'battle of the experts at trial.'").

9. Thus, since the scientific community cannot agree on a methodology to use to determine structural similarity between BD and GHB, or GBL and GHB, the Analogue Statute should be declared unconstitutional vague as applied to 1,4 Butanediol (BD) and Gamma-Butyrolactone (GBL).

**WHEREFORE**, for the above reasons, defendant, moves this Court to dismiss Counts Two and Five of the Indictment on the grounds that the Analogue Statute, 21 U.S.C. §802(32)(A) as applied to 1,4 Butanediol (BD), and Gamma-Butyrolactone (GBL) is unconstitutionally vague.

Respectfully submitted,

*/s/* Stanley L. Hill

STANLEY L. HILL & ASSOCIATES, P.C.
10 South LaSalle Street   Suite 1301
Chicago, Illinois  60603
312.917.8888

Slip Copy
(Cite as: 2002 WL 31014834 (S.D.N.Y.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

UNITED STATES OF AMERICA,
v.
Todd Kelly ROBERTS and Michael Toback,
Defendants

No. 01 CR 410 (RWS0.

Sept. 9, 2002.

Honorable Mary Jo White, United States Attorney for the Southern District of New York, New York, NY, By: Laurie A. Korenbaum, Assistant U.S. Attorney, for United States of America, of counsel.

Collins, McDonald & Gann, Carle Place, NY, for Defendant Todd Kelly Roberts.

Edward P. Jenks, Mineola, NY, for Defendant Todd Kelly Roberts.

Mancuso, Rubin & Fufidio, White Plains, NY, By: Andrew A. Rubin, for Defendant Michael Toback, of counsel.

*OPINION*

SWEET, J.

*1 Defendants Todd Kelly Roberts ("Roberts") and Michael Toback ("Toback") have moved under Rule 12(b) of the Federal Rules of Criminal Procedure for an order dismissing the indictment on grounds that the indictment is unconstitutionally vague. Based on evidence presented at a hearing held June 17, 2002, and for the reasons set forth below, the motion is granted.

*Prior Proceedings*

The factual and procedural history of this case are detailed in a prior opinion, *United States v. Roberts*, No. 01 Cr. 410(RWS), 2001 WL 1602123 (S.D.N.Y. Dec. 14, 2002), familiarity with which is assumed, and will only partly be repeated here.

On April 26, 2001, Roberts and Toback were indicted for conspiracy to distribute and to possess with the intent to distribute 1,4-butanediol, and for distributing and possessing with the intent to distribute 1,4-butanediol, which the Government alleges is, under 21 U.S.C. § 802(32)(A) (the "Analogue Statute"), an analogue of the Schedule I controlled substance gamma hydroxybutyric acid ("GHB"). [FN1] As explained in this Court's December 14, 2001 opinion, DEA agents had originally investigated a store operated by Toback for the sale of a product believed to be containing GHB. The product, called "Rejoov," was sold openly and was purchased by body builders to rejuvenate muscles. After DEA testing, "Rejoov" was found not to contain GHB, but rather 1,4-butanediol, [FN2] the substance now claimed by the Government to be an analogue of GHB. *See Roberts*, 2001 WL 1602123, at *1.

> FN1. *A controlled substance analogue, to the extent that it is "intended for human consumption," is treated for purposes of the federal narcotics law as a Schedule I controlled substance. 21 U.S.C. § 813*

> FN2. *In addition to being used as a nutritional supplement, 1,4-butanediol has long been used as a common industrial solvent. See, e.g., 146 Cong. Rec. H55-03 (Jan. 31, 2000).*

Subsequently, both defendants filed various pre-trial motions, including a motion to dismiss the indictment on grounds that the Analogue Statute is unconstitutionally vague and the indictment is based on procedures which violate the Administrative Procedures Act ("APA").

On December 14, 2001, this Court issued an opinion denying each of the pre-trial motions except the motion to dismiss on grounds of vagueness. As to that issue, it was ordered that, pursuant to the Court's interpretation of the statute, a hearing must be held to determine whether the statutory definition of the term "controlled substance analogue" as applied to 1,4-butanediol is unconstitutionally vague.

A hearing was held on June 17, 2001, at which

both parties presented expert testimony on the chemical structures of 1,4-butanediol and GHB. Following the hearing, the parties submitted post-hearing briefs. The motion was deemed fully submitted on July 19, 2002.

*Facts*

At the June 17, 2001 hearing, the two defendants and the Government presented expert witnesses who testified about the chemical structures of 1,4-butanediol and GHB. The Defense called two witnesses, both credible and qualified academics with extensive credentials in organic chemistry. Toback called Dr. Boyd Haley, Chairman and Professor of the chemistry department at the University of Kentucky, with a joint appointment in the College of Pharmacy. Roberts called Dr. David Schuster, Director of Graduate Studies in Chemistry at New York University and former visiting professor at Yale University. Schuster is the author of over 200 publications and holder of two patents. The Government called Dr. Tom DiBerardino, an employee of the DEA's Drug and Chemical Evaluation Section (a branch of the Office of Diversion Control) with a PhD in polymer chemistry.

*2 Each of the three experts agreed that the two substances in question contain a different "functional group": 1,4-butanediol has an alcohol major functional group while GHB has a carboxylic acid major functional group. That is, one is commonly classified as an alcohol or diol, and one is an acid. Those functional groups impart physical properties to the chemicals, such as acidity levels, melting and boiling points, and odors. All three also agreed that 1,4-butanediol can be converted into GHB within the human body upon ingestion.

Both of the defendants' experts concluded that 1,4-butanediol and GHB are not substantially similar in chemical structure, and that the majority of experts in their field would agree with them. Both based their conclusions upon a number of criteria, including the fact that GHB is an acid and 1,4-butanediol is generally classified as an alcohol. They testified that the two substances would be classified in different parts of an organic chemistry book, which is organized by functional group, and that a student who stated on a college exam that GHB and 1,4-butanediol were similar in chemical structure would indeed fail such an exam.

Dr. Haley related that GHB has a negative charge at one end of its structure, and a positive charge at the other, so that the ends necessarily attract, thereby effectively rendering GHB an unstable molecule. In contrast, 1,4- butanediol does not have such properties and would remain linear. Likewise, Dr. Schuster stated that when illustrated three dimensionally, GHB folded over upon itself, and would not appear static because of its instability. Both experts testified that results from a nuclear magnetic resonance (NMR) spectometer, routinely used by chemists to analyze the nature of the functional groups present, documents the structural dissimilarity of 1,4-butanediol and GHB.

The Government's witness, a DEA employee with a degree in polymer (rather than organic) chemistry, disputed the conclusions drawn by Dr. Haley and Dr. Schuster that the two chemicals were not structurally similar. Dr. DiBernardino's principal disagreement was the importance placed on the functional group in assessing chemical structure. He testified that while comparing functional groups might illustrate different properties and reactivity of the chemical substances, such comparisons were not relevant in determining structural differences.

*Discussion*

I. *Applicable Law*

"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975) (*citing United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)). As explained by the Supreme Court, the "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (citations omitted); *accord Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 525, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994); *see United States v. Nadi,* 996 F.2d 548, 550 (2d Cir.1993); *United States v. Jackson,* 968 F.2d 158, 161 (2d Cir.1992).

*3 The defendants have challenged the definition

Slip Copy
(Cite as: 2002 WL 31014834 (S.D.N.Y.))

Page 3

of "controlled substance analogue" in 21 U.S.C. § 802(32)(A) under both the adequate notice and arbitrary enforcement prongs of this doctrine. The Analogue Statute defines a "controlled substance analogue" as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). In this Court's December 14, 2001 opinion, a conjunctive reading of the Analogue Statute was adopted, meaning that in order for a substance to qualify as an analogue, both clause (i) *and* either clause (ii) or (iii) must be met. Hence, the language requiring the "chemical structure" of the substance in question to be "substantially similar to the chemical structure of a controlled substance" is central to any analysis of the constitutionality of the statute. This language, and that of the statute as a whole, must be examined as applied specifically to 1,4-butanediol given the facts at hand.

II. *The Analogue Statute is Unconstitutionally Vague As Applied to 1,4- Butanediol*

Applying the constitutional standards stated above, a review of the facts reveals that there could not have been adequate notice to the defendants that 1,4-butanediol qualifies as an analogue of GHB. The definition of "controlled substance analogue" is a scientific definition, meaning that it is proper to explain its terms by reference to the art or science to which they are applicable. See *Corning Glass Works v. Brennan*, 417 U.S. 188, 201, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). An acceptance of the meaning of terms in the scientific community would therefore inform the vagueness inquiry. See *United States v. Jackson*, 968 F.2d at 161-63.

In the case of the substances in question, it is readily apparent from the June 17, 2002 hearing that there is no scientific consensus whether 1,4-butanediol has a chemical structure substantially similar to GHB. Both of the defendants' experts, academic leaders in the field of organic chemistry, testified that in fact the substances were dissimilar in chemical structure, as evidenced by their functional groups, the instability of GHB as opposed to 1,4- butanediol, and a comparison of NMR spectograms. The government's expert, of course, disagreed, indicating that an ordinary person would have no legitimate, reasonable opportunity to know whether 1,4-butanediol meets the analogue definition.

*4 While the Government is correct that a statute should not be void for vagueness if it "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," *United States v. Petrillo*, 332 U.S. 1, 9, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947), it cannot be said, as the Government argues, that the phrase "substantially similar to the chemical structure of a controlled substance" is so familiar that a reasonable layperson could determine what it means as applied to the substances in question. The Government, based on its expert's testimony, contends that "chemical structure" is a very narrow term which exists separate and apart from a substance's functional group and which should not be confused with a chemical's "properties." However, this very argument demonstrates that the scientific community cannot even agree on the proper methodology used to determine structural similarity. The DEA employee emphasized the atomic composition of the two substances as illustrated in their molecular chains, relying primarily on two-dimensional charts. But this approach was deemed insufficient by the organic chemists, who stressed that, when illustrated three-dimensionally, GHB would fold over upon itself with little stability and thus manifest a completely different chemical structure than 1,4-butanediol.

It is for this reason that the Government's reliance on *United States v. McKinney*, 79 F.3d 105 (8th Cir.1996), is misplaced. In *McKinney*, the court found that the analogue statute was not void for vagueness as applied to the drugs aminorex and phenethylamine. The court held that "a reasonable lay person could ... have examined a chemical chart

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of the two substances were substantially similar." Id. at 108. Here, even if the diagrams of 1,4-butanediol and GHB were made available to a layperson, the lack of consensus by experts in the field as to the import of those diagrams demonstrates that they could not provide such a person with the degree of notice sufficient to know whether their conduct would be prohibited by the Analogue Statute. See United States v. Forbes, 806 F.Supp. 232, 237-38 (D.Colo.1992) (holding Analogue Statute vague as applied to AET where the "scientific community cannot even agree on a methodology to use to determine structural similarity" and "criminal culpability will turn solely on a 'battle of the experts' at trial.")

*The Government also argues that the mere fact that 1,4-butanediol converts into the body into GHB, thus producing identical pharmacological effects as ingesting GHB, is sufficient to defeat a challenge of vagueness. In support, the Government cites the recent case of* United States v. Fisher, 289 F.3d 1329 (11th Cir.2002), *where the Eleventh Circuit found that the Analogue Act was not unconstitutionally vague when applied to treat GBL as an analogue of GHB. In* Fisher, *the Court found that the public was given notice that GHB analogues were illegal with the passage of Public Law 106-172, which ordered GHB to be scheduled and designated GBL as a "List I" chemical, and the issuance of subsequent DEA Final Rules.* Id. at 1335-36. *However, recognizing that "the only thing that matters is that GBL meets the controlled analogue definition," the court went on to analyze for vagueness purposes whether "ordinary people would be able to determine that GBL is an illegal analogue of GHB."* Id. *The court found that under this standard the statute was not vague as applied to GBL since, based on expert testimony, GBL indisputably transformed into GHB when ingested into the human body.*

*5 The Government's reliance on Fisher is misplaced. First, it must be remembered that a vagueness challenge must be considered with regard to the particular facts at hand, and the testimony relied on in Fisher regarding GBL cannot take the place of the facts established in this case as they relate to 1,4-butanediol. [FN3] Second, as the court in Fisher recognized, the decisive question is whether an ordinary person would be able to *determine that 1,4-butanediol is an analogue of GHB based on the statutory definition. The answer can only be determined by looking at the definition itself, which in turn must depend on the statute's construction. Although the* Fisher *court decided not to address the issue of construction, 289 F.3d at 1338, the argument offered by the Government in reliance on that case ignores the reading of the statute adopted by this Court in its December 14, 2001 opinion, which requires an analogue to be defined according to both its chemical structure and its pharmacological effects. By insisting that the first prong, requiring a substantially similar "chemical structure," provides sufficient notice due to the effects it has on the body, the Government, contrary to its own admonishments, has conflated the two requirements.* [FN4]

FN3. For instance, as to the transformation of GBL into GHB, which weighed heavily for the court in Fisher, the Government's DEA expert in this case conceded that GBL was more easily converted into GHB than 1,4-butanediol.

FN4. As the Government acknowledged in its February 27, 2002 submission to this court, "[t]he issue on this motion is not whether the defendants had actual knowledge that their conduct was illegal, an issue properly presented before a jury, but rather "whether the statute gives adequate notice to a person of ordinary intelligence that the distribution of 1,4-butanediol for human consumption is illegal." (Gov't Mem. dated Feb. 27, 2002, at 9-10); see also Kolender, 461 U.S. at 357 (holding that a statute is not void for vagueness if ordinary people can understand what conduct is prohibited); Nadi, 996 F.2d at 550 (explaining the vagueness-as-applied analysis); Fisher, 289 F.3d at 1336-37 ("[T]he only thing that matters is that GBL meets the controlled analogue definition. Therefore, the Court will use Section 802(32)(A) to determine if ordinary people would be able to determine that GBL is an illegal analogue of GHB."). However, it should be pointed out that, regarding public notice, the history of 1,4-butanediol

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

differs from that of **GBL**. Although mentioned along with **GBL** by the DEA as a substance that "[u]nder certain circumstances ... may satisfy the definition of a **controlled substance analogue**," Fisher, at 1335-36, 1,4-butanediol was not designated as a List I chemical. Moreover, when GBL was targeted, the record indicates that letters entitled "Warning Letter and Request for Recall" were sent by the government to distributors. No such actions were taken in the case of 1,4-butanediol.

Perhaps more importantly, the Analogue Act's definition as applied to 1,4- butanediol fails the second prong of the Supreme Court's void-for-vagueness test by encouraging arbitrary enforcement. See Kolender, 461 U.S. at 357-58 ("[W]e have recognized recently that the more important aspect of vagueness doctrine "is ... the other principal element of the doctrine--the requirement that a legislature establish minimal guidelines to govern law enforcement."). At the hearing, it was established that there exist ten naturally occurring substances that are related to GHB. Several of these substances differ from GHB in the same manner as 1,4-butanediol, differing by one functional group, yet they are readily available as food ingredients and even as health food supplements. When presented with this evidence, the Government's expert agreed that under the Government's interpretation of "substantially similar to the chemical structure of a controlled substance," products such as Gamma Aminobutyric Acid (GABA) (commonly sold in health food stores) and succinic acid (a common food additive) would qualify. The Government's failure to prosecute such similar substances, particularly given its position on the proper reading of the Analogue Statute, [FN5] evinces the failure of Congress to "establish minimal guidelines to govern law enforcement ." Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

   FN5. As indicated in this Court's December 14, 2001 opinion, the Government argued that only one prong of the analogue definition need be proven to qualify a substance as a "controlled substance analogue." Roberts, 2001 WL 1602123, at *2.

Nothing has prevented Congress from either scheduling or listing 1,4- butanediol as a controlled substance. Congress had the opportunity to address the substance when it scheduled GHB and when it listed GBL, but it took no action. 1,4-butanediol has been around for decades, and has a long history as an industrial solvent, yet no law has been passed making the manufacture or sale of 1,4-butanediol a crime. The statute the defendants are alleged to have violated sets no parameters to define or narrow the scope of that which may be considered as an analogue of GHB. The only apparent limitation in the statute aside from the vague language used is its focus on "designer drugs" and substances that are specifically designed to mimic controlled substances. See, e.g., McKinney, 79 F.3d at 107; Roberts, 2001 WL 1602123, at *5; Forbes, 806 F.Supp. at 238. In this connection, it is argued that flexibility is necessary and appropriate to permit the Analogue Statute to address designer drugs that can be made available before being formally prohibited. However, 1,4-butanediol, which existed and was openly sold long before the problematic use of GHB was even contemplated, does not fall within this category. Thus, any protections against the arbitrary prosecution of those in possession of the substance would have to originate not from the words of the statute, but from retroactive judicial decisionmaking. This does not provide the level of guidance required by the Constitution. See Kolender, 461 U.S. at 358. As the Supreme Court has admonished, "[l]egislatures may not ... abdicate their responsibilities for setting the standards of the criminal law." Smith, 415 U.S. at 575. The life-altering consequence of criminal penalties should require utmost deliberation and care before adoption. Indeed, "[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of government." Kolender, 461 U.S. at 358 n. 7 ( quoting United States v. Reese, 92 U.S. 214, 221, 23 L.Ed. 563 (1875)).

*6 In sum, when applied to 1,4-butanediol, the Analogue Statute provides neither adequate notice

Slip Copy
(Cite as: 2002 WL 31014834 (S.D.N.Y.))

Page 6

*nor the requisite safeguards against arbitrary enforcement that are required of the Constitution The lack of scientific consensus as to the definition of an analogue and the Government's own contradictory positions on the subject demonstrate that no ordinary person could have fair warning that GHB and 1,4-butanediol are structurally similar And the prosecution of 1,4-butanediol, as opposed to other substances with equal or greater similarity to GHB, shows that Congress has "impermissibly delegate[d] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."* Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct 2294, 33 L.Ed.2d 222 (1972).

Conclusion

*For the foregoing reasons, the defendants' motion to dismiss the indictment is granted.*

*It is so ordered.*

2002 WL 31014834 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works